UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTEEN MARIE OBERTS,<br><br>Petitioner,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Respondent. | No. 1:18-cv-00142-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

I.      **Introduction**

Plaintiff Christeen Marie Oberts ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II and supplemental security income pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]  *See* Docs. 14, 19 and 20.  Having reviewed the record as a whole, the

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 8 and 10.

Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, Plaintiff's appeal is denied.

## II.  Procedural Background

On August 18, 2010, Plaintiff filed previous applications for disability insurance benefits and supplemental security income alleging disability beginning July 16, 2009.  AR 95.  In a hearing decision dated October 23, 2012, ALJ Patricia Leary Flierl found that Plaintiff was not disabled.  AR 95-103.

On May 29, 2014, Plaintiff filed an application for disability insurance benefits.  AR 26. On June 3, 2014, Plaintiff filed an application for supplemental security income.  AR 26.  In both applications, Plaintiff alleged disability beginning July 1, 2013.  AR 26.  The Commissioner denied the applications initially on September 5, 2014, and upon reconsideration on December 17, 2014.  AR 26.  On January 12, 2015, Plaintiff filed a timely request for a hearing before an Administrative Law Judge.  AR 26.

Administrative Law Judge Sharon L. Madsen presided over an administrative hearing on September 6, 2016.  AR 72-91.  Plaintiff appeared with the assistance of an attorney.  AR 72. Impartial vocational expert Judith Najarian (the "VE") also testified.  AR 72.

On November 2, 2016, the ALJ denied Plaintiff's application.  AR 26-39.  The Appeals Council denied review on November 22, 2017.  AR 8-10.  On January 26, 2018, Plaintiff filed a complaint in this Court.  Doc. 1.

## III.  Factual Background[2]

### A.  Plaintiff's Testimony and Reports

Plaintiff (born October 17, 1979) shared an apartment with her sixteen-year-old son and ten-year-old daughter. AR 75-76.  On a typical day, Plaintiff stayed in bed, waking her children by "basically just holler[ing] at them in their rooms."  AR 78.  How long she remained in bed depended on how painful her back was.  AR 78.  Until the children returned from school, Plaintiff slept, read, and watched television.  AR 78.  After the children returned from school, Plaintiff

---

[2] Although the transcript of the October 2012 hearing and other evidence relating to Plaintiff's 2010 applications are included in the administrative record, these materials are not summarized in the factual background unless they are necessary to understand procedures or evidence related to the 2014 applications that are the subject of this decision.

helped her daughter with homework and the family ran errands. AR 78. Plaintiff relied on her children to assist her with dressing, housekeeping and shopping. AR 77. Her son cooked for the family. AR 78.

Typically, even though Plaintiff took 30 mg. of morphine daily, the pain level in her lower back was 7/10. AR 80-81. The pain increased when she had to stand for an extended time. AR 83. Physical therapy did not help. AR 82. After a few sessions, "the physical therapist said that it was dangerous for [Plaintiff] to continue going." AR 82. Plaintiff had not received shots and had been denied referral to a neurosurgeon. AR 82. She relied on pain medications, ice, heating pads and a TENS unit. AR 82. Her medications included Gabapentin, Tramadol, Baclofen, and Morphine Sulfate. AR 370.

Plaintiff's knee pain was tolerable, but she had fluid on her knee and still needed to wear a knee brace. AR 83. She could stand for 30-45 minutes, walk for about 40 minutes and sit for about an hour. AR 84. She was unable to pick things up from the ground or put on her pants or boots. AR 84. Although she was physically able to climb stairs, she chose not to do so. AR 84. Plaintiff could not lift anything weighing more than five pounds. AR 84. Plaintiff needed to rest at least half of the day, and if she exerted herself she required even more rest. AR 88.

Plaintiff reported tendonitis in both wrists. AR 86. Nerve issues affected her hands causing numbness and tingling, along with sudden loss of strength and difficulty picking up items and holding them. AR 86-87.

Plaintiff completed high school and was able to drive. AR 77. From March 2011 to January 2013, Plaintiff worked as a house and office cleaner performing the full range of activities, including heavy tasks such as vacuuming and window cleaning. AR 80, 323. From January 2013 to April 2014, Plaintiff worked part time providing in-home support for a disabled individual. AR 80, 323. Plaintiff cleaned the disabled person's home and performed personal care, including lifting the client to and from his bed, wheelchair, shower, and couch or recliner. AR 324. When providing home health care the heaviest weight that Plaintiff lifted exceeded 100 pounds, and she frequently lifted 50 pounds or more. AR 324.

## B. Medical Records[3]

### 1. Community Medical Center Emergency Department

On July 13, 2013, Plaintiff went to the emergency department at Community Medical Center experiencing neck and shoulder pain after lifting a heavy box. AR 413. Kevin Lunney, M.D., diagnosed muscle strain and prescribed Valium and Hydrocodone-Acetaminophen. AR 413-414.

On December 26, 2013, Herbert Bivins, M.D., treated Plaintiff for a bruised ankle incurred when Plaintiff was kicked during her martial arts class. AR 418. On December 27, 2013, Plaintiff was again treated in the emergency department for right ankle and foot swelling after sparring with her son at karate. AR 419.

On April 4, 2014, Plaintiff fell after experiencing back pain and bilateral hand numbness. AR 420. Gilbert Ramirez, M.D., observed that although Plaintiff claimed to be unable to move her fingers, she could move her elbows and shoulders freely. AR 421. He wrote:

> Back pain, somatization, considered cord process but unlikely given her inconsistent neurologic exam and history. Suspect there may be a psychological component to symptomatology. Will provide analgesics and re-assess.

AR 421-22.

Plaintiff again visited Community Medical Center's emergency department on May 20, 2014. Juan Patlan, PA, wrote:

> 34 year old female with complaint of chronic multiple areas of pain. States has had chronic mid to low back pain for 9 to 10 months, left knee pain, tendonitis to bilateral wrist[s] for months. States was being seen at Sierra Vista Clinic but refused to go back because they refused to do MRI, instead sent her for physical therapy (but refused). Also states seen in emergency room several times for same. Would like MRI of back and for me to fill out disability placard for DMV. Has clinic appointment with Internal medicine next month. Initially did not want pain medication until I informed her that I was unable to carry out her requests then wanted Norco/muscle relaxant. No acute changes in character or quality of pain.

AR 423.

---

[3] The administrative record includes documentation of Plaintiff's receiving treatment for conditions unrelated to her disability claims, including emergency room visits following minor accidents (burned hand, arm laceration, severe headache) and primary care treatment of acute illness. The Court's factual summary does not address such unrelated care.

4

On May 10, 2015, Plaintiff was transported to the Community Medical Center emergency department when she fell to her knees during a back spasm and could not get up. AR 459. The treating physician, Eli Lessard, M.D., wrote:

> Acute exacerbation of chronic back pain. No red flags. Insignificant trauma. Pt well appearing, ambulatory, with improving [symptoms]. Doubt fracture or acute cord pathology. [Patient] with upper extremity [symptoms], these are physiologically unlikely, have been reported before, and are resolving in any case. [Patient] noted using phone and restroom unassisted by nursing.

AR 481.

On December 16, 2015, Plaintiff became dizzy while driving. AR 486. After getting out of her car she fell to the ground. AR 486. Emergency Medical Services transported Plaintiff to the emergency department where she reported severe back pain. AR 486.

### 2. Clinica Sierra Vista

On September 21, 2013, Plaintiff saw Bianca Tristan, F.N.P., and complained of deep and stabbing back pain for the past seven months and sharp neck pain dating to her 2011 motor vehicle accident. AR 405. Both types of pain were aggravated by ascending stairs, bending, changing positions, coughing, daily activities, defecation, extension, flexion, jumping, lifting lying and resting, running, sitting, sneezing and standing. AR 405. Heat and acetaminophen relieved the pain. AR 405. Ms. Tristan observed muscle spasms in Plaintiff's cervical and lumbar spine when Plaintiff moved. AR 406. Ms. Tristan prescribed cyclobenzaprine and Robaxin and suggested physical therapy. AR 405, 407.

On October 15, 2013, Plaintiff complained to Christina Weaver, D.O., that she was experiencing stable and persistent severe (8/10) back pain. AR 402, 403. The pain had worsened over the last six months and was not relieved by Gabapentin, heat, Vicodin, Valium or over-the-counter medications. AR 402. The worst pain was at the base of Plaintiff's neck. AR 402. X-rays revealed straightening of the cervical lordosis (curve) related to muscle spasm or soft tissue injury. AR 408. Dr. Weaver prescribed Toradol and Prednisone and ordered magnetic resonance imaging of Plaintiff's neck. AR 404. The doctor referred Plaintiff for physical therapy and recommended yoga and stretching. AR 404.

On February 2, 2014, Plaintiff told Dr. Weaver that her back pain was persistent and had worsened over the last nine months.  AR 395.  The pain disturbed Plaintiff's sleep.  AR 395.  Plaintiff was using muscle relaxants, stretches and Norco as needed.  AR 395.  Plaintiff reported that she had "[s]lowed down on martial arts."  AR 395.  She requested a less bulky knee brace, explaining that she did not need as much support.  AR 395.  Dr. Weaver observed that Plaintiff winced in pain with palpation over the bilateral paraspinous muscles in her lumbar area.  AR 396.  The doctor postponed Plaintiff's request for an MRI, instead referring Plaintiff for physical therapy.  AR 397.

### 3.     Community Medical Center Clinics

Philippe Vanderscheiden, M.D., compared August 5, 2014, magnetic resonance images of Plaintiff's spine to the February 2012 images.  AR 444-45.  Dr. Vanderscheiden noted:

> 1. New left paracentral foraminal disc protrusion with contact with the left S1 and left L5 nerve root identified at the 5-1 level.
>
> 2. Narrow congenital canal at the 4-5 and 5-1 level with mild spinal canal stenosis seen at this level.  Disc protrusion effacing the right lateral recess and the neural foramina at the 5-1 level is new since prior study.

AR 445.

When Plaintiff saw Lynn A. Keenan, M.D., on September 22, 2014, she complained of having trouble walking and experiencing numbness in her feet.  AR 444.

On January 6, 2015, Gregory Gilmore, D.O., examined Plaintiff to follow up her back pain.  AR 447.  Plaintiff complained of worsening cervical and upper back pain, tingling in her hands and weak grip.  AR 447.  Dr. Gilmore identified a small area of numbness on Plaintiff's right foot.  AR 447.  He noted that both the neurosurgical and orthopedic services had declined to see Plaintiff since she was not a candidate for surgery.  AR 447.  Plaintiff's trapezius muscles were very tight, and her lumbar spine and paraspinal musculature were tender.  AR 448.

Dr. Gilmore again saw Plaintiff for her back pain on April 2, 2015.  AR 455.  Plaintiff's pain had not worsened since her January appointment.  AR 455.  Plaintiff had tried three sessions of physical therapy but had been discharged from treatment when she saw no improvement.  AR 457.

On May 14, 2015, Dr. Keenan noted that Plaintiff was still in pain and stiff following her fall and emergency treatment. AR 467. Physical examination revealed "muscles in spasm and tender to very light palpation." AR 467.

Magnetic resonance imaging of Plaintiff's left knee in July 2015 revealed no meniscular tear or ligamentous injury. AR 479.

On September 28, 2015, Glenn Limas, PT, discharged Plaintiff from physical therapy, reporting that she had attended three appointments between August 17 and September 28, 2015. AR 474. Although Plaintiff reported less knee pain (3/10), Limas opined that Plaintiff demonstrated poor compliance with basic mobility exercises and was unlikely to benefit from further therapy. AR 474-75.

At a follow-up appointment on October 6, 2015, Dr. Gilmore noted Plaintiff's gradually worsening back pain. AR 476. The doctor reported that the physical therapist recommended a less supportive knee brace since the brace Plaintiff was using was weakening her quad muscles. AR 476.

## IV. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

///

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

**V.  The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

> 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).

In addition, when an applicant has one or more previous denials of applications for disability benefits, as Plaintiff does in this case, he or she must overcome a presumption of

nondisability. The principles of *res judicata* apply to administrative decisions, although the doctrine is less rigidly applied to administrative proceedings than in court. *Chavez v. Bowen,* 844 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen,* 844 F.2d 664, 666 (9th Cir. 1988).

Social Security Acquiescence Ruling ("SSR") 97–4(9), adopting *Chavez,* applies to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Social Security Act as a prior claim in which there has been a final administrative decision that the claimant is not disabled. A previous final determination of nondisability creates a presumption of continuing nondisability in the unadjudicated period. *Lester v. Chater,* 81 F.3d 821, 827 (9th Cir. 1995). The presumption may be overcome by a showing of changed circumstances, such as new and material changes to the claimant's RFC, age, education, or work experience. *Id.* at 827–28; *Chavez,* 844 F.2d at 693.

**VI.    Summary of the ALJ's Decision**

The ALJ first determined that despite improvement of her knee impairment, Plaintiff's new neck and back impairments were sufficient to overcome the *Chavez* presumption of continued nondisability.  AR 31.  Then, using the Social Security Administration's five-step sequential evaluation process the ALJ determined that Plaintiff did not meet the disability standard.  AR 26-39.

The ALJ found that Plaintiff had engaged in substantial gainful activity after the alleged onset date of July 1, 2013.  AR 28.  Her severe impairments included lumbar degenerative disc disease, left knee Baker's cyst, and obesity.  AR 28.  None of the severe impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526).  AR 28-29.

The ALJ concluded that Plaintiff had the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently, and to sit, stand or walk six hours in an eight-hour workday.  AR 29.  Plaintiff could occasionally climb ladders, ropes and scaffolds.  AR 29.  She could frequently stoop, crouch, crawl, climb ramps or stairs, kneel and balance.  AR 29.

///

///

9

Plaintiff was able to perform her past relevant work as a data entry clerk, Cashier II, Security Guard and Gate Guard.  AR 37.  Accordingly, the ALJ found that Plaintiff was not disabled from July 1, 2013, through November 2, 2016, the date of the hearing decision.  AR 38.

## VII.    The ALJ Provided Clear and Convincing Reasons for Rejecting Plaintiff's Pain Testimony Concerning Her Back Pain

Plaintiff contends that substantial evidence did not support the ALJ's determination that Plaintiff lacked credibility.  Defendant counters that the ALJ appropriately rejected Plaintiff's testimony as inconsistent with medical records.  After reviewing the record as a whole in light of applicable law, the Court finds that sufficient evidence supports the ALJ's conclusion.  Even if the Court could have interpreted the evidence differently, because evidence in the record could reasonably support either outcome, Defendant's interpretation must stand.  *See Flaten v. Sec'y, Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

An ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  His or her findings of fact must be supported by specific, cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  To determine whether the ALJ's findings are supported by substantial evidence, a court must consider the record as a whole, weighing both the evidence that supports the ALJ's determination and the evidence against it.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

A claimant's statement of pain or other symptoms is not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p, 2017 WL 5180304 (Oct. 25, 2017).  "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to the [Social Security Act]."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to

produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281-1282.  *See also* Social Security Ruling 16-3p Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 at *3 (2017) ("SSR 16-3p") ("In determining whether there is an underlying medically determinable impairment that could reasonably be expected to produce an individual's symptoms, we do not consider whether the severity of the individual's symptoms is supported by the objective medical evidence.").  In this case, the first step is satisfied by the ALJ's finding that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms."  AR 31.  The ALJ did not find Plaintiff to be malingering.

If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if she makes specific findings that include clear and convincing reasons for doing so.  *Garrison*, 759 F.3d at 1014-15; *Smolen*, 80 F.3d at 1281.  It is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).  "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  SSR 16-3p at *10.

Because a "claimant's subjective statements may tell of greater limitations than can medical evidence alone," an "ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (2001) (quoting *Fair*, 885 F.2d at 602 (9th Cir. 1989)).  *See also Bunnell*, 947 F.2d at 34 (holding that when there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence).  "Congress clearly meant that so long as the pain is *associated* with a clinically demonstrated impairment, credible pain testimony should

///

contribute to a determination of disability." *Id.* at 345 (internal quotation marks and citations omitted).

Nonetheless, the law does not require an ALJ simply to ignore inconsistencies between objective medical evidence and a claimant's testimony. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)). As part of his or her analysis of the record as a whole, an ALJ properly considers whether the medical evidence supports or is consistent with a claimant's pain testimony. *Id.*; 20 C.F.R. §§ 404.1529(c)(4), 416.1529(c)(4) (symptoms are determined to diminish residual functional capacity only to the extent that the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence").

In assessing the claimant's credibility, the ALJ may also use "ordinary techniques of credibility evaluation," considering factors such a lack of cooperation during consultative examinations, a tendency to exaggerate, inconsistent statements, an unexplained failure to seek treatment, inconsistencies between the testimony and conduct, and inconsistencies between daily activities and the alleged symptoms. *Tonapetyan,* 242 F.3d at 6; *also see Smolen*, 80 F.3d at 1284; *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (including as factors claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties about the nature, severity, and effect of the alleged disabling symptoms). In addition to objective medical evidence, the ALJ must consider (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the alleged pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of prescribed pain medication; (5) pain relief treatments other than medication; other methods used to relieve pain; and (6) other factors concerning functional limitations and restrictions due to pain. 20 C.F.R. §§ 404.1529(c), 416.929(c).

///

"If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958. "[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." *Bunnell*, 947 F.2d at 346. On the other hand, if the ALJ's credibility finding is supported by substantial evidence in the record, courts "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

Using Defendant's boilerplate language, the ALJ first wrote that Plaintiff's "statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible with the medical evidence and other evidence in the record for the reasons explained in the decision." AR 31. The ALJ then analyzed the medical record in detail. AR31-35. She began her analysis by considering the medical evaluations of magnetic resonance imaging of Plaintiff's spine and left knee, concluding that images of Plaintiff's left knee showed "progressive improvement with the latest MRI showing no significant abnormalities," but that imaging of Plaintiff's lumbar spine showed gradual progression of degenerative disc disease. AR 31-32.

In the course of summarizing the medical records included in the administrative record, the ALJ observed numerous inconsistencies between Plaintiff's representation of her symptoms, diagnoses and treatment, and other evidence addressing the same symptoms, diagnoses and treatment. For example, Plaintiff told her doctor that the physical therapist said she would not benefit from physical therapy, but the therapist reported to the doctor that he was discharging Plaintiff who attended only few sessions demonstrated poor tolerance, and was not compliant with the prescribed mobility exercises.[4] AR 32, 474-75.[5] Similarly, Plaintiff reported that pain medications were not helping her, but disregarded her physician's instructions and took the prescribed MS Contin only at night. AR 33.

---

[4] Plaintiff testified that the physical therapist told her that it was dangerous for her to continue receiving physical therapy. AR 82.

[5] The ALJ does not include Dr. Weaver's earlier recommendation that Plaintiff try yoga and stretching as well as an earlier referral for physical therapy, which Plaintiff declined. *See* AR 404.

On another occasion, Plaintiff reported that her hands were numb and immobile even though movement of her elbows and shoulders was normal. AR 34. Although Plaintiff held her hands in extension and not atonic and felt pain, she was observed cleaning her glasses and using both hands easily. AR 34. Having ruled out a spinal cord issue based on examination and history, the doctor suspected somatization.[6] AR 34.

Neurosurgical and orthopedic services determined that Plaintiff was not a candidate for surgery. AR 33. Her doctor provided conservative treatment, including ice and a TENS unit. AR 33.

At another appointment, Plaintiff's doctor minimized Plaintiff's reports of poor grip strength noting that the complaint was physiologically unlikely and was resolving anyway. AR 33, 481. While in the doctor's office, Plaintiff used the telephone and restroom without assistance. AR 33, 481. Plaintiff's complaints of neck pain and hand neuropathy were not consistent with an EMG study and magnetic resonance imaging. AR 33, 457, 501.

On another occasion, Plaintiff sought to secure a DMV disabled parking permit and a temporary disability letter. AR 444.[7] She complained of numb feet and difficulty walking, but her doctor observed had full motor strength, normal reflexes and intact sensation except for a small area on the top of her foot. AR 443.

The ALJ also noted several other inconsistencies. Plaintiff sought a doctor's note to enable her to have a service animal but she actually took in foster dogs. AR 34. She testified that she lifted only five pounds but sought medical treatment for muscle sprain after lifting a 15-pound box.[8] AR 34. Despite claims of debilitating pain and disfunction, Plaintiff participated in martial arts classes. AR 34. She was able to drive. AR 34. Although Plaintiff testified that her pain precluded all work activity, the friend who completed a third-party adult function report on

///

---

[6] Somatization is a psychiatric term referring to the conversion of mental experiences or states into bodily symptoms. *Dorland's Illustrated Medical Dictionary* at 1544 (28th ed. 1994).

[7] *See also* AR 423 (Complaining of Clinica Sierra Vista's refusal to give her the MRI and DMV parking permit she requested Plaintiff had sought an MRI and parking permit at the emergency room. When the physician's assistant on duty declined to satisfy Plaintiff's requests, she asked for Norco and a muscle relaxant instead.)

[8] The ALJ did not consider that during the time period at issue here, Plaintiff worked part time providing in-home support for a disabled person, lifting 100 pounds occasionally and 50 pounds frequently. AR 324.

Plaintiff's behalf depicted Plaintiff as able to perform all housework and care for her children, drive, shop, and go out alone. AR 35-36.

The hearing decision sets forth abundant evidence in the record to support the ALJ's determination that Plaintiff's representations to the agency were not fully credible. The Court will not second guess the ALJ's assessment of Plaintiff's credibility.

## VIII. The ALJ Properly Relied on Existing Medical Evidence to Determine Plaintiff's Residual Functional Capacity

Plaintiff contends that the ALJ erred by formulating her residual functional capacity by relying on the opinion of the agency (non-examining) physicians. She contends that valid resolution of the case requires the ALJ to secure a disability opinion form a treating or examining physician. Emphasizing Plaintiff's burden of proving eligibility for disability benefits, the Commissioner responds that the ALJ properly relied on the agency physicians' opinions in determining Plaintiff's residual functional capacity. The Court concludes that the ALJ properly relied on the existing administrative record to determine Plaintiff's residual functional capacity.

### A. Agency Physicians' Opinions

On September 5, 2014, agency physician C. De la Rosa, M.D., opined that Plaintiff could lift 20 pounds occasionally and ten pounds frequently, and sit, stand, or walk six hours in an eight-hour workday. AR 117, 129. She could frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. AR 117-18, 129-30. She could occasionally climb ladders, ropes and scaffolds. AR 117, 129. Reconsidering the application on December 8, 2014, G. Bugg, M.D., agreed with Dr. De la Rosa. AR 142-43.

No other physicians opined on Plaintiff's residual functional capacity.

### B. Hearing Decision

The ALJ gave great weight to Dr. De la Rosa's opinion finding that it "fairly considers the combined effects of [Plaintiff's] impairments, symptom severity, as well as her subjective complaints, and activities of daily living." AR 35. The ALJ added that Dr. De la Rosa's opinion was consistent with the objective examination findings of record and the nature of claimant's impairments, benefits from treatment, and the diagnostic studies. AR 35.

15

## C.     Determining Residual Functional Capacity

"Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p.  The residual functional capacity assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments.  SSR 96-8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In doing so the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews*, 53 F.3d at 1039-40.

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

## D.     ALJ's Reliance on Opinion of Non-Examining Physician

Plaintiff first contends that the ALJ erred in relying of the opinion of a non-examining physician.  However, this contention is contrary to applicable law.

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750.  An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record.  20 C.F.R. §§ 404.1527(c)(4),

///

416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in disability determinations. *Lester*, 81 F.3d at 830. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen*, 80 F.3d at 1285. The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Such independent reasons may include laboratory test results or contrary reports from examining physicians and Plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes*, 881 F.2d at 755). The ALJ complied with this legal standard in relying on Dr. De la Rosa's opinion.

**E.     The ALJ Was Not Required to Obtain the Opinion of a Treating or Examining Physician**

Even though applicable law permits an ALJ to rely on the opinion of a non-examining physician, Plaintiff contends that the ALJ erred by not securing the opinion of a treating or examining physician. No legal authority, however, required the ALJ to do so.

A claimant generally bears the burden of proving his or her entitlement to disability benefits. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); 20 C.F.R § 404.1512(c). But

Social Security hearings are not adversarial proceedings. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). Whether or not the claimant is represented by counsel, the ALJ "must inform himself about the facts relevant to his decision." *Heckler v. Campbell*, 461 U.S. 458, 471 n. 1 (1983). "The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). *Accord Tonapetyan*, 242 F.3d at 1150; *Smolen*, 80 F.3d at 1288. Nonetheless, the ALJ's obligation to obtain additional evidence is triggered only when the evidence from the treating medical source is inadequate to determine the claimant's disability, however. *Thomas*, 278 F.3d at 958; *Tonapetyan*, 242 F.3d at 1150 (holding that ALJs have a duty fully and fairly to develop the record when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence). When the ALJ finds support in the record adequate to determine the claimant's disability, he is not required to secure an additional consultative opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

## F.     The ALJ Did Not Improperly Rely on His Own Opinion

Finally, Plaintiff contends that by not securing the opinion of a treating or examining physician, the ALJ improperly relied on his own evaluation of the medical records. The Commissioner correctly distinguishes the ALJ's reliance on the opinion of a non-examining physician from an ALJ's usurping the role of the medical expert.

"[A]n ALJ may not act as his own medical expert as he is "simply not qualified to interpret raw medical data in functional terms." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). Decisions addressing this issue frequently speak of an ALJ's "play[ing] doctor and making [his] own independent medical findings." *See, e.g., Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006). Such cases encompass multiple factual scenarios. *See, e.g. Nguyen*, 172 F.3d at 35 (ALJ formulated claimant's residual functional capacity based on magnetic resonance images without the benefit of any medical opinion about the functional limitations attributable to the impairments depicted in the images); *Rohan v. Chater*, 98 F.3d 966, 970 (7th

18

Cir. 1996) (ALJ erred in rejecting medical opinion based on the ALJ's belief that claimant's attempts to operate a small business were inconsistent with a diagnosis of major depression); *Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996) (ALJ's common sense determination of residual functional capacity was not supported by substantial evidence where the largely illegible record revealed little physical impairment and included no functional analysis by a treating or expert physician); *Day v. Weinberger*, 522 F.2d 1154, 1155-56 (9th Cir. 1975) (ALJ rejected opinions of treating physicians in favor of criteria set forth in a leading medical textbook identified by the ALJ in his independent medical research).

Although these cases encompass multiple factual situations in which an ALJ determined a claimant's residual functional capacity based on his or her own medical evaluation, none of them apply to the ALJ's determination of Plaintiff's residual functional capacity based on the opinion of a non-examining physician. The ALJ here properly relied on Dr. De la Rosa's opinion. *See Banks*, 434 F.Supp.2d at 805 (ALJ properly relied on physician's opinion of Plaintiff's residual functional capacity).

G.      **Summary and Conclusion**

The ALJ's determination of Plaintiff's residual functional capacity was legally appropriate and supported by substantial evidence.

///

///

///

///

///

///

///

///

///

///

///

### IX.     Conclusion and Order

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Christeen Marie Oberts.

IT IS SO ORDERED.

Dated:   **April 8, 2019**                              **/s/ Gary S. Austin**
                                                   UNITED STATES MAGISTRATE JUDGE